# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| | |
|---|---|
| MICHELLE KATHLEEN WOLF, | ) |
| Plaintiff, | ) |
| v. | ) Cause No. 1:18-CV-103-HAB |
| ANDREW SAUL, Commissioner of the Social Security Administration[1], | ) |
| Defendant. | ) |

## OPINION AND ORDER

This matter comes before the Court on Plaintiff Michelle Kathleen Wolf's ("Wolf") Brief in Support of Plaintiff's Complaint to Review Decision of Commissioner of Social Security Administration (the "Wolf Brief") filed on December 18, 2018. (ECF No. 14). Defendant Andrew Saul, Commissioner of the Social Security Administration (the "Commissioner") filed his Memorandum in Support of Commissioner's Decision (the "Commissioner Brief") on February 25, 2019. (ECF No. 20). Wolf filed no reply. This matter is now ripe for determination.

**A.  Procedural History**

On November 7, 2014, Wolf filed an application for disability insurance benefits under Title II of the Social Security Act. A hearing was held before an administrative law judge ("ALJ") on November 30, 2016. On May 26, 2017, the ALJ entered his Decision determining that Wolf was not disabled.

---

[1] Andrew Saul is now the Commissioner of Social Security and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d). *See also* Section 205(g) of the Social Security Act, 42 USC § 405(g) (action survives regardless of any change in the person occupying the office of Commissioner of Social Security).

Wolf timely filed her Request for Review of Hearing Decision/Order with the Appeals Council on July 21, 2017. The Appeals Council denied Wolf's appeal on February 22, 2018. Wolf then filed her Complaint to Review Decision of Commissioner of Social Security Administration with this Court on April 23, 2018. (ECF No. 1).

**B.     Legal Analysis**

**1.     *Standard of Review***

A claimant who is found to be "not disabled" may challenge the Commissioner's final decision in federal court. This Court must affirm the ALJ's decision if it is supported by substantial evidence and free from legal error. 42 U.S.C. § 405(g); *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002). Substantial evidence is "more than a mere scintilla of proof." *Kepple v. Massanari*, 268 F.3d 513, 516 (7th Cir. 2001). It means "evidence a reasonable person would accept as adequate to support the decision." *Murphy v. Astrue*, 496 F.3d 630, 633 (7th Cir. 2007); *see also Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995) (substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.") (citation and quotations omitted).

In determining whether there is substantial evidence, the Court reviews the entire record. *Kepple*, 268 F.3d at 516. However, review is deferential. *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). A reviewing court will not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003) (quoting *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000)).

Nonetheless, if, after a "critical review of the evidence," the ALJ's decision "lacks evidentiary support or an adequate discussion of the issues," this Court will not affirm it. *Lopez*, 336 F.3d at 539 (citations omitted). While the ALJ need not discuss every piece of evidence in the

record, he "must build an accurate and logical bridge from the evidence to [the] conclusion." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). Further, the ALJ "may not select and discuss only that evidence that favors his ultimate conclusion," *Diaz*, 55 F.3d at 308, but "must confront the evidence that does not support his conclusion and explain why it was rejected," *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004). Ultimately, the ALJ must "sufficiently articulate his assessment of the evidence to assure" the court that he "considered the important evidence" and to enable the court "to trace the path of [his] reasoning." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993) (quoting *Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir. 1985) (internal quotation marks omitted)).

## 2. *The ALJ's Decision*

A person suffering from a disability that renders her unable to work may apply to the Social Security Administration for disability benefits. *See* 42 U.S.C. § 423(d)(1)(A) (defining disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months"). To be found disabled, a claimant must demonstrate that her physical or mental limitations prevent her from doing not only her previous work, but also any other kind of gainful employment that exists in the national economy, considering her age, education, and work experience. § 423(d)(2)(A).

If a claimant's application is denied initially and on reconsideration, she may request a hearing before an ALJ. *See* 42 U.S.C. § 405(b)(1). An ALJ conducts a five-step inquiry in deciding whether to grant or deny benefits: (1) whether the claimant is currently employed, (2) whether the claimant has a severe impairment, (3) whether the claimant's impairment is one that the Commissioner considers conclusively disabling, (4) if the claimant does not have a conclusively

disabling impairment, whether he has the residual functional capacity to perform his past relevant work, and (5) whether the claimant is capable of performing any work in the national economy. *See* 20 C.F.R. § 404.1520(a); *Zurawski v. Halter*, 245 F.3d 881, 885 (7th Cir. 2001).

At step one, the ALJ found that Wolf had not engaged in substantial gainful activity since September 15, 2014. At step two, the ALJ found that Wolf had the following severe impairments: fibromyalgia, mild lumbar facet degenerative changes, spondylosis/radiculitis/sacroiliac dysfunction, migraines/headaches, and obesity. The ALJ also found that Wolf's mental health issues were a non-severe impairment.

At step three, the ALJ found that Wolf did not have "an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (R. 16). At step four, the ALJ found that Wolf had the residual functional capacity to:

> perform a significant but limited range of light work as defined in 20 CFR 404.1567(b) with lifting, carrying, pushing and pulling ten pounds frequently and twenty pounds occasionally. The claimant can sit at least six hours in an eight hour day and stand and/or walk six hours in an eight hour work day. However, the claimant should not climb ladders, ropes, and scaffolds; can occasionally kneel, crouch, and crawl; can occasionally balance; can occasionally bend and stoop in addition to what is required to sit; and can occasionally use ramps and stairs. Aside from ramps and stairs on an occasional basis, the claimant should not work upon uneven surfaces. The claimant should avoid concentrated exposure to wetness such as when working upon wet and uneven surfaces. The claimant should avoid work within close proximity to open and exposed heights and open and dangerous machinery such as open flames and fast moving exposed blades. The claimant is limited from concentrated exposure to excessive airborne particulate, dusts, fumes, and gases and to excessive heat, humidity, and cold such as when working outside or within a sawmill, boiler room, chemical plant, greenhouse, refrigerator, or sewage plant. The claimant should avoid work within close proximity to very loud noises (level 5) such as a fire alarm or very bright flashing lights such as a strobe more than occasionally.

(R. 17). Given the RFC, the ALJ determined that Wolf could perform her past relevant work as a sales attendant, and therefore was not disabled.

**3.** *Residual Functional Capacity*

On appeal, Wolf argues that the ALJ's RFC determination was not supported by substantial evidence.[2] Wolf claims that the RFC failed to take into consideration the limitations caused by her carpal tunnel syndrome, her migraines, or her mental impairments.

Residual functional capacity measures what work-related activities a claimant can perform despite her limitations. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004). It is the most the claimant can still do. *Craft v. Astrue*, 539 F.3d 668, 675–76 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(1)). A claimant's RFC must be based upon the medical evidence in the record and other evidence, such as testimony by the claimant or her friends and family. 20 C.F.R. § 404.1545(a)(3).

Although an ALJ is not required to discuss every piece of evidence, she must consider all the evidence that is relevant to the disability determination and provide enough analysis in her decision to permit meaningful judicial review. *See Young* 362 F.3d at 1002; *Clifford v. Apfel*, 227 F.3d 863, 870–71 (7th Cir. 2000). The ALJ must also "consider the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." See 20 C.F.R. § 404.1523(c). An ALJ may not selectively discuss portions of a physician's report that support a finding of non-disability while ignoring other portions that suggest a disability. *Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009).

The Court finds it sufficient to address Wolf's claim of error regarding the ALJ's failure to consider her carpal tunnel syndrome ("CTS"). Wolf correctly notes that "the ALJ does not even

---

[2] Although Wolf submits that the ALJ erred in her Step 2 analysis when she did not consider her carpal tunnel syndrome as an impairment, the Court can proceed directly to the RFC analysis because the step two requirement of severity is "merely a threshold requirement." *Hickman v. Apfel*, 187 F.3d 683, 688 (7th Cir. 1999); *see also Castile v. Astrue*, 617 F.3d 923, 927 (7th Cir. 2010) (same). The ALJ identified other impairments that were severe, so the determination about her carpal tunnel syndrome at Step 2 was "of no consequence with respect to the outcome of the case. Because the ALJ recognized numerous other severe impairments, he was obligated to proceed with the evaluation process." *Castile*, 617 F.3d at 927.

mention carpal tunnel at all—not once in the entire 23-page decision." (ECF No. 14 at 10). The Commissioner does not dispute that the ALJ failed to consider Wolf's CTS, instead claiming that the failure "is at most, harmless error that cannot justify a remand." (ECF No. 20 at 8). The Court disagrees.

The Commissioner's critiques of the CTS evidence are well-taken. For the most part, the CTS evidence is: (1) prior to Wolf's June 17, 2015, bilateral CTS release surgery; (2) largely confined to Wolf's subjective complaints; and (3) confined to unrelated medical history recitals in Wolf's medical records. It may very well be, then, that the ALJ would have reached the same determination even if he had considered Wolf's CTS. But that is not enough to establish that the ALJ's admitted error was harmless. As stated by the Seventh Circuit,

> [t]he government seems to think that if it can find enough evidence in the record to establish that the administrative law judge *might* have reached the same result had she considered all the evidence and evaluated it as the government's brief does, it is a case of harmless error. But the fact that the administrative law judge, had she considered the entire record, might have reached the same result does not prove that her failure to consider the evidence was harmless. Had she considered it carefully, she might well have reached a different conclusion.

*Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010) (original emphasis).

The ALJ does state that he would have reached the same conclusion "even if additional limitations were accorded to the claimant with respect to frequent, not constant, fine and gross manipulation, handling, fingering, feeling, grasping, turning, and gripping." (R. 23). However, with no indication in the written Decision that he considered Wolf's well-documented history of CTS, it is impossible for the Court to conclude that a logical bridge has been built from the record to the ALJ's ultimate decision. The ALJ's undisputed failure to analyze the CTS evidence has resulted in a record that fails to provide enough analysis to permit meaningful judicial review. Therefore, this matter must be remanded for additional proceedings.

6

## C. Conclusion

For the foregoing reasons, this matter is REMANDED to the ALJ for additional proceedings consistent with this Opinion and Order. The Clerk is ORDERED to enter judgment in favor of Plaintiff and against Defendant reversing the decision below.

SO ORDERED on September 25, 2019.

                                               s/ Holly A. Brady
                                               JUDGE HOLLY A. BRADY
                                               UNITED STATES DISTRICT COURT